UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

United States of America

v.                                      Crim. Action No. 5:12-cr-78

Benjamin H. Weisinger

## REPORT AND RECOMMENDATION
(Doc. 117)

Benjamin H. Weisinger, proceeding *pro se*, has moved under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence for sexual exploitation of a child.  Following a four-day trial, a jury in this district found Weisinger guilty of one count of producing child pornography, in violation of 18 U.S.C. § 2251(a) and (e), and two counts of receiving child pornography, in violation of 18 U.S.C. § 2252(a)(2) and (b)(1).[1]  (Doc. 100 at 1; PSR at 1.)  On September 3, 2013, Chief United States District Judge Christina Reiss sentenced Weisinger to a term of imprisonment of 216 months, to be followed by a 10-year term of supervised release.  (Doc. 100 at 2–3.)

Weisinger asserts in his § 2255 Motion that he received ineffective assistance of counsel prior to and during his trial, in violation of the Sixth Amendment to the United States Constitution.  (Doc. 117.)  For the reasons stated below, I recommend that Weisinger's Motion be DENIED.

---

[1]  The jury convicted Weisinger on four counts; however, one count (Count Four) was later vacated by Order of the court.  (*See* Doc. 88.)  The reasons for this vacatur are discussed *infra*.

## Background

### I.    Indictment and Trial

On June 11, 2012, an Indictment was filed in this district charging Weisinger with producing child pornography, in violation of 18 U.S.C. § 2251(a), and possessing child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B).  (Doc. 1.)  The Office of the Federal Public Defender was appointed to represent Weisinger on June 12, 2012. (Doc. 3.)  Weisinger was arraigned and pleaded not guilty to both counts on June 20, 2012. (Doc. 10.)  On June 27, 2012, Assistant Federal Public Defender David McColgin entered his appearance on behalf of Weisinger.  (Doc. 14.)

The Grand Jury subsequently filed two Superseding Indictments.  (Docs. 27, 54.) The final charges against Weisinger were as follows: Count One, producing child pornography, in violation of 18 U.S.C. § 2251(a); Count Two, receiving child pornography, in violation of 18 U.S.C. § 2252(a)(2) and (b); Count Three, receiving child pornography, in violation of 18 U.S.C. § 2252(a)(2) and (b); and, Count Four, possessing child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B).  (Doc. 54.)  The case proceeded to a jury trial, with Attorney McColgin representing Weisinger throughout the proceedings.  (Doc. 127.)  The trial ended on April 5, 2013 when the jury returned a verdict of guilty on all counts.  (Docs. 70–75, 81.)

The evidence presented at trial revealed that Weisinger had sexually abused the minor child of his girlfriend over a period of years.  (Doc. 105 at 155–66.)  As later summarized in the Presentence Investigation Report (PSR), the charged offense conduct consisted of Weisinger influencing the minor victim to make a video of herself in which

she was depicted engaging in sexually explicit conduct. (PSR at 7–8, ¶¶ 23–31.) The video was contained in an electronic file and was described as "Capture_20111002.wmv"[2] in the Second Superseding Indictment. (Doc. 54.) The victim testified that she had recorded the video of herself engaged in this conduct at the direction of Weisinger and had electronically forwarded the video via e-mail to Weisinger's e-mail account, again at his direction. (Doc. 105 at 141, 145–46.)

Following the verdict, Weisinger, through counsel, filed a Motion for Acquittal of Judgment on all four counts on May 20, 2013. (Doc. 86.) He argued for the vacatur of Count Four, asserting that "[h]is convictions in Counts Two and Four [were] based on the same set of facts." (*Id.* at 4.) Weisinger contended that the conviction on Count Four amounted to a violation of the Double Jeopardy Clause, because once he was found guilty of receiving child pornography (Count Two), he would necessarily be found guilty of possessing child pornography (Count Four). (*Id.*) Weisinger also sought a judgment of acquittal on all four counts on the ground that the government failed to present sufficient evidence to satisfy "the interstate commerce element of each charge." (*Id.*) The Court granted Weisinger's motion to vacate Count Four, agreeing that Counts Two and Four related to the same underlying offense,[3] but denied Weisinger's request to vacate the remaining Counts. (Docs. 88, 89.) Sentencing was then set for September 3, 2013. (Doc. 92.)

---

[2] The phrase "Capture_20111002" is consistent with the date of October 2, 2011. That is the date the victim testified that she created the video (Doc. 105 at 146) and the date identified by a forensic expert at trial as the date the video was sent to an e-mail account associated with Weisinger. (Doc. 90 at 44–46.) At trial it was frequently referred to as the "wave" file.

[3] The Court, however, reserved the government's right to "reinstate the charge [on Count Four] in the event the conviction on Count Two is vacated on appeal." (Doc. 88 at 3; Doc. 89 at 3.)

## II.     The Presentence Report

The final PSR was issued on August 12, 2013.  It concluded that Weisinger faced an advisory Sentencing Guidelines imprisonment range of 292 to 365 months.  (PSR at 18, ¶ 94.)  This range was calculated using the 2012 United States Sentencing Guidelines (USSG).  (*Id.* at 11, ¶ 45.)  Counts One, Two, and Three were grouped for guideline calculation purposes.  (*Id.* ¶ 46 (citing USSG § 3D1.2(c)).)  The base offense level for these three Counts was 32.  (*Id.* ¶ 47 (citing USSG § 2G2.1(a)).)

Specific offense characteristics resulted in the addition of eight additional offense levels.  (*Id.* ¶ 48.)  Two of these additional offense levels were added because "[t]he offense involved a minor who had attained the age of twelve years but not attained the age of sixteen years."  (*Id.* (citing USSG § 2G2.1(b)(1)(B)).)  Two more were added because "[t]he offense involved the commission of a sexual act or sexual contact."  (*Id.* (citing USSG § 2G2.1(b)(2)(A)).)  An additional two offense levels were added because "the minor was . . . in the custody, care, or supervisory control of [Weisinger]."  (*Id.* at 12, ¶ 48 (citing USSG § 2G2.1(b)(5)).)  Finally, two more levels were added because the offense involved the use of a computer.  (*Id.* (citing USSG § 2G2.1(b)(6)(B)(i)).)  These additional offense levels brought Weisinger's total offense level to 40.  (*Id.* at 13, ¶ 55.)

Weisinger's prior criminal history consisted of one motor vehicle offense.  (*Id.* at 13–14.)  Accordingly, Weisinger's Criminal History Category (CHC) was I.  (*Id.* at 14, ¶ 61.)  The advisory guideline imprisonment range for a total offense level of 40 and a CHC of I was 292 to 365 months.  (*Id.* at 18, ¶ 94.)

### III.  Sentencing

Attorney McColgin filed a Sentencing Memorandum on behalf of Weisinger on August 23, 2013.  (Doc. 96.)  McColgin argued that two of the enhancements proposed in the PSR should not be applied.  First, he contended that the enhancement under USSG § 2G2.1(b)(2)(A) was not warranted because the definitions of "a sexual act" and "sexual contact" in 18 U.S.C. § 2246(2) and (3) did not include masturbation, the conduct depicted in the video.  (Doc. 96 at 2.)  Second, McColgin argued that the enhancement under USSG § 2G2.1(b)(6)(B)(i) did not apply because "computers of one sort or another are now almost invariably used in the commission of child pornography offenses, and thus this characteristic is essentially inherent in the offense and should not be the basis for a separate enhancement."  (*Id.*)  Weisinger's Sentencing Memorandum included a Motion for Downward Variance.  (*See* Doc. 96.)  McColgin argued that a downward departure to the mandatory minimum of 15 years was warranted because "[t]he instant offense [was] clearly an aberration in the life of an otherwise law-abiding and hardworking individual."  (Doc. 96 at 3.)

Sentencing occurred on September 3, 2013.  (Doc. 114.)  After hearing from counsel, Chief Judge Reiss engaged in the applicable Sentencing Guideline calculation, concluding that the use-of-computer enhancement based on USSG § 2G2.1(b)(6)(B)(i) would not be imposed.  (Doc. 114 at 18.)  This adjustment had the effect of lowering Weisinger's advisory imprisonment range to 235–293 months.  (*Id.* at 21–22.)  All other offense-level enhancements set forth in the PSR were found to be applicable.  The court thereupon engaged in a careful review of the statutory sentencing factors set forth at

18 U.S.C. § 3553(a) (*id.* at 22–29), and elected to depart or vary downward from the advisory Sentencing Guideline range and impose a sentence of imprisonment for a term of 216 months on Count 1, and 216 months on Counts 2 and 3, each count to run concurrent to the other, for a total term of 216 months, to be followed by 10 years of supervised release with conditions. (*Id.* at 29.) No fine was imposed but Weisinger was ordered to pay restitution in the amount of $5,274.55. (*Id.* at 34.)

## IV.    Direct Appeal

On September 19, 2013, Weisinger, through Attorney McColgin, filed a Notice of Appeal with the United States Court of Appeals for the Second Circuit. (Doc. 101.) In the appeal, Weisinger argued that his conviction should be overturned asserting that several evidentiary errors were committed at trial and during pretrial proceedings and that errors were made in the determination of his sentence. *See United States v. Weisinger*, 586 F. App'x 733 (2d Cir. 2014).

In his appeal, Weisinger argued that the district court erred when it failed to suppress statements he made to police prior to having a *Miranda* warning read to him. *Id.* at 735 (citing *Miranda v. Arizona*, 384 U.S. 436, 445 (1966)). Weisinger contended that: "(1) the district court improperly required him to bear the burden of providing that he was in custody when questioned, and (2) the facts show that he was in custody." *Id.* The Court of Appeals found that the district court had properly concluded Weisinger was not in custody when he made statements to law enforcement and affirmed the district court's denial of Weisinger's motion to suppress. *Id.* at 735–36.

Second, Weisinger argued that "evidence of his past abuse of the minor victim of his charged crimes, as well as of his sexual predilections, were substantially more unfairly prejudicial than probative and, therefore, inadmissible under Fed. R. Evid. 403." *Id.* at 736. The Court of Appeals rejected this argument, finding that it could identify "no unfair prejudice in admission of this evidence in light of limits placed on its initial admission by the district court." *Id.* (citing *United States v. Awadallah*, 436 F.3d 125, 131 (2d Cir. 2006) (holding that where record shows district court "conscientiously balanced the proffered evidence's probative value with the risk for prejudice," its Rule 403 determination will be disturbed only if "arbitrary or irrational")). In a related issue, the Court of Appeals also found no error in the admission of the victim's testimony on redirect examination in which the victim described Weisinger's past sexual abuse. The Court concluded that trial counsel had opened the door to this area of inquiry by attacking the witness's credibility. *Id*. at 737.

Third, Weisinger asserted that the district court abused its discretion when it permitted the government to call an expert witness to testify "about the frequency with which minors fail promptly to report sexual abuse." *Id.* The Court of Appeals found this claim meritless. *Id.* Fourth, Weisinger contended that the district court erred when it failed to exclude evidence that the government purportedly did not provide in a timely manner as required by Fed. R. Crim. P. 16. *Id.* at 738. The Court rejected this claim because Weisinger failed to show how he was "prejudice[d by] the timing of the disclosures." *Id.*

7

In his final claim to the Court of Appeals, Weisinger contended that the district court erred in applying "a two-level enhancement for offenses involving 'sexual contact' . . . [because] the pornography crimes of conviction depict [the] victim engaged in masturbation, rather than sexual contact with another person." *Id.* at 738 (citation omitted). The Court found this claim meritless, reasoning that the definition of sexual contact included masturbation. *Id.* at 739. Finding Weisinger's claims on appeal meritless, the Court of Appeals affirmed the judgment of the district court. *Id.*

## V.    Weisinger's § 2255 Motion

Weisinger now asserts in his § 2255 Motion that he received ineffective assistance of counsel. (Doc. 117.) Weisinger alleges five purported errors to support this claim. (*Id.*) First, he contends that Attorney McColgin failed "to subpoena [Weisinger's] time[]sheets from [his] place of employment," which, "would [have] show[n] [that Weisinger] was at work at the time incriminating evidence was entered and deleted on [his] laptop." (*Id.* at 4.) Second, Weisinger asserts that Attorney McColgin erred when he failed to confront a government witness with evidence that an electronic file bore a timestamp that would have shown that Weisinger "was at work when [the] file . . . was deleted." (*Id.* at 5.) Third, Weisinger argues that Attorney McColgin failed to object to the expert testimony of a witness who was not qualified to testify as an expert. (*Id.* at 6.) Fourth, Weisinger claims that Attorney McColgin failed to impeach the testimony of the minor victim and her mother. (*Id.* at 8.) And fifth, Weisinger asserts that Attorney McColgin "never prepped [him] to take the stand," which Weisinger claims discouraged him from testifying in his own defense. (*Id.* at 10.)

8

On August 29, 2016, Attorney McColgin filed an Affidavit responding to the factual assertions set forth in Weisinger's § 2255 Motion (Doc. 127), and on September 28, 2016, the government filed its Opposition to the Motion (Doc. 128).

## Analysis

### I.    Standards Governing 28 U.S.C. § 2255 Motions

A prisoner in federal custody may file a motion under 28 U.S.C. § 2255 "to vacate, set aside[,] or correct" his sentence if he can show that the sentence (1) was "imposed in violation of the Constitution or laws of the United States," (2) was issued by a court that did not have jurisdiction, (3) was in excess of the lawful maximum, or (4) "is otherwise subject to collateral attack."  28 U.S.C. § 2255(a).  Relief under § 2255 is therefore generally available "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'"  *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)); *accord Cuoco v. United States*, 208 F.3d 27, 30 (2d Cir. 2000).

### II.    Ineffective Assistance of Counsel Claims

#### A.    Legal Standard

Criminal defendants have a Sixth Amendment right to effective assistance of counsel.  *Janvier v. United States*, 793 F.2d 449, 451 (2d Cir. 1986).  To establish a claim of ineffective assistance of counsel, the petitioner must show (1) that his counsel was objectively deficient and "(2) that he was actually prejudiced."  *Morales v. United States*,

635 F.3d 39, 43 (2d Cir. 2011) (citing *Strickland v. Washington*, 466 U.S. 668, 688, 692–93 (1984)).  The petitioner bears the burden of proof and must establish each element. *See United States v. Birkin*, 366 F.3d 95, 100 (2d Cir. 2004) (citing *Strickland*, 466 U.S. at 687).  This burden is not easily met, because there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Raysor v. United States*, 647 F.3d 491, 495 (2d Cir. 2011) (quoting *Strickland*, 466 U.S. at 689).  What constitutes "reasonable professional assistance" must be viewed in light of the law and circumstances confronting counsel at the time counsel represented the petitioner.  *Parisi v. United States*, 529 F.3d 134, 141 (2d Cir. 2008) (quoting *Strickland*, 466 U.S. at 689).  With regard to *Strickland's* performance prong, the determinative question at this step is not whether counsel "deviated from best practices or most common custom," but whether his "representation amounted to incompetence under prevailing professional norms."  *Harrington v. Richter*, 562 U.S. 86, 105 (2011).

        With respect to *Strickland's* prejudice prong, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.  "It is not enough . . . to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693.  Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.

###### B.    Weisinger's Employment Timesheets

Weisinger first contends that Attorney McColgin failed "to subpoena [Weisinger's] time[]sheets from [his] place of employment," which "would show [that Weisinger] was at work at the time incriminating evidence was entered and deleted on [his] laptop." (Doc. 117 at 4.) This claim is meritless. Attorney McColgin's Affidavit reveals that McColgin did in fact obtain Weisinger's employment timesheets. (Docs. 127 at 1, ¶ 3; 127-1.) McColgin chose not to seek admission of these at trial, however, because he concluded that they "did not establish that [Weisinger] was at work at the critical times." (Doc. 127 at 1, ¶ 3.) More precisely, McColgin explained: "Weisinger's time[]sheets show that Weisinger was not at work on October 2, 2011, when the [child pornography] video [of the victim] was created and emailed to his email address." (*Id.* at 2, ¶ 5.) McColgin has attached to his Affidavit copies of Weisinger's employer's timesheets, which reveal that on October 1, 2011 Weisinger clocked in at 3:50 a.m. and out again at 9:16 a.m. (Doc 127-1 at 19.) According to these timesheets, Weisinger reported for work next on October 3, 2011 at 3:56 am. (*Id.*) McColgin chose not to offer the timesheets into evidence because they did not lend support to any defense argument that Weisinger was at work during the relevant time frame. (Doc. 127 at 1–2.) In a Reply to the government's response to the § 2255 Motion, Weisinger appears to shift his course. He argues that McColgin should have obtained his timesheets from his employment in 2010. (Doc. 131 at 1.) But the testimony at trial established that the video was created and electronically sent to Weisinger's e-mail in October 2011. (Doc. 91 at 84–86; Doc. 104 at 225–31;

Doc. 105 at 141, 145–46; Doc. 106 at 177–78.)  Weisinger's activities in 2010 are of little or no relevance.

With regard to the decision to not offer these records for admission into evidence, this type of tactical decision falls directly under the realm of trial strategy that courts are ill-suited to second-guess.  *Greiner v. Wells*, 417 F.3d 305, 323 (2d Cir. 2005).  In fact, counsel's "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable."  *Strickland*, 466 U.S. at 690.  The timesheets would not have exonerated Weisinger, as he contends; rather, they could have aided the government's case.  Attorney McColgin's decision not to seek admission of them, therefore, cannot be considered a deficient performance.

Weisinger also fails to satisfy *Strickland's* prejudice prong, as his argument falls woefully short of satisfying the requirement that he show a reasonable probability that the admission of his workplace records would have changed the result of the trial.

###　C.　　Failure to Call a Witness

In a somewhat related argument, Weisinger contends that McColgin failed to recall a witness who had testified in the government's direct case and failed to impeach that witness with a timestamped electronic file that Weisinger contends would have shown he was at work when an electronic file was deleted.  (Doc. 117 at 5.)  Weisinger does not identify which witness he refers to in this argument.  Thus, the claim is vague and conclusory, leaving the court unable to identify any error that might have prejudiced Weisinger.  *See Tineo v. United States*, 977 F. Supp. 245, 259 (S.D.N.Y. 1996).

It may be reasonable to assume that Weisinger's argument concerns the e-mail containing the sexually explicit video of the victim, which was sent from benweisinger@yahoo.com to bbheadstrom@gmail.com on October 3, 2011.  (Doc. 128 at 1–2, 6–7.)  Weisinger was the subscriber to both e-mail accounts.  (*Id.*)  As noted above, Weisinger contends that he could not have received and deleted this October 3 e-mail because its timestamp "would have shown that Weisinger 'was at work when [it] was deleted.'"  (Doc. 127 at 2, ¶ 6 (quoting Doc. 117 at 5).)  But as Attorney McColgin points out, "it would have made no difference if his time[]sheets showed that he was at work" when the e-mail was received and deleted because Weisinger "likely would have had his smart phone with him at work" and thus Weisinger had the ability to receive and delete e-mails while at work.  (*Id.*)  In fact, Det. Ingrid Jonas testified that she seized a Samsung Galaxy phone from Weisinger during the investigation.  (Doc. 104 at 117.)  Vermont State Police Lieutenant Brian Penders, who was qualified to testify as a computer forensic expert, testified that Weisinger's Samsung Galaxy phone indeed had internet access capability.  (Doc. 91 at 55.)

In his Reply, Weisinger refers to the testimony of "Lt. Peters."  (Doc. 131.)  A "Lt. Peters" did not testify at trial.  It may be assumed that Weisinger is referring to Lt. Penders, the computer forensic expert.[4]  (Docs. 90, 91.)  Penders was the subject of a

---

[4] While it is true a Sergeant David Petersen also testified at trial, Weisinger does not appear to be referring to Sergeant Petersen in his Reply (Doc. 131), because Petersen's testimony did not relate to the claim Weisinger raises in his Reply.  (*See* Doc. 104 at 198–210.)  Sergeant Petersen's testimony included a description of what happened when he responded to the November 6, 2011 911-call made by the victim's mother, Louise Vinton.  (*Id.* at 199–200.)  In his testimony, Sergeant Petersen stated that he seized a laptop computer from the Vinton household and that he had Louise Vinton forward to his work e-mail address the e-mail containing the pornographic video of the victim that Louise Vinton had found earlier on November 6, 2011.  (*Id.* at 202–10.)

searching and thorough cross-examination by McColgin. (Doc. 91 at 76–95.) That cross-examination included a detailed inquiry into Penders's understanding of the timing of the electronic communications at issue. (*Id.* at 85–94.)

In light of this searching cross-examination, Attorney McColgin's decision not to recall the unnamed witness (presumed today to be Lt. Penders) in an attempt to impeach his or her testimony with the timestamped electronic file was another tactical decision deserving of deference. *See Broxmeyer v. United States*, No. 15-1732, 2016 WL 5478968, at *2 (2d Cir. Sep. 29, 2016) (citing *United States v. Nersesian*, 824 F.2d 1294, 1321 (2d Cir. 1987) ("The decision whether to call any witnesses on behalf of the defendant, and if so which witnesses to call, is a tactical decision of the sort engaged in by defense attorneys in almost every trial.")). Thus, "counsel's decision as to 'whether to call specific witnesses—even ones that might offer exculpatory evidence—is ordinarily not viewed as a lapse in professional representation.'" *United States v. Best*, 219 F.3d 192, 201 (2d Cir. 2000) (quoting *United States v. Schmidt*, 105 F.3d 82, 90 (2d Cir. 1997)).

In advancing this argument, Weisinger also fails to satisfy the prejudice prong of *Strickland*, as he has not shown that attempting to impeach the credibility of the witness had a reasonable probability of changing the results of the trial. To show ineffective assistance of counsel for failure to call a witness, the petitioner must explain "how such testimony would have changed the result," *Carr v. Senkowski*, No. 01-CV-689, 2007 WL 3124624, at *21 (W.D.N.Y. Oct. 23, 2007). Here, there was abundant evidence of Weisinger's guilt. The 15-year-old victim testified that she had engaged in sexually explicit conduct at the direction of Weisinger, recording it and sending it to him at his

direction. (Doc. 105 at 144–53.) She also testified that Weisinger had shown her the video "on his phone." (*Id.* at 153.) The victim's testimony was corroborated by her mother's testimony (Doc. 94 at 42–44, 54–55, 80) and the electronic evidence derived from forensic examination of the devices seized in the investigation. The forensic evidence showed that the e-mail containing the video was received on Weisinger's phone; and that it was downloaded, viewed, saved, and then deleted on his phone. (Doc. 128 at 7 (citing Doc. 105 at 132–35).) Evidence derived from internet service providers Yahoo and Google revealed that a Yahoo account subscribed to by "Ben Weisinger" contained the sexually explicit video of the minor victim in a "sent folder" as an attachment to an e-mail that had been sent to a Gmail account ("bbheadstrom@gmail.com") maintained through an account at Google on October 3, 2011 at 3:15 am EST. (Doc. 104 at 70; PSR at 6, ¶ 18.) The representative from Yahoo testified that the e-mail included the "Capture_20111002" video as an attachment. (Doc. 104 at 73.) Correspondingly, a representative from Google testified that the user for "bbheadstrom@gmail.com" was Benjamin Weisinger and that Gmail account contained the video received as an attachment to an e-mail from Weisinger's Yahoo account. (*Id.* at 153, 157–60*.*)

Considering this evidence, Attorney McColgin concluded that little would be gained by positing at trial that Weisinger could not have deleted the relevant e-mail because its deletion occurred when he was purportedly at work. It therefore follows that McColgin made a reasonable tactical decision not to recall the unnamed witness. Such a strategic decision is not ineffective assistance of counsel.

### D.    Expert Witness

Weisinger contends that Attorney McColgin should have objected to the testimony of Seven Networks employee Robert Riggins, who Weisinger now describes as "an expert [witness]."  (Doc. 117 at 6.)  Weisinger contends that Riggins, a technical account manager with Seven Networks (Doc. 105 at 122–23), testified as an expert on "the use of [a] Samsung Smart Phone" (Doc. 117 at 6).  But in fact, Riggins did not testify as an expert; rather, he testified as both a fact witness and a custodian of records.  (Doc. 105 at 122–37; Doc. 127 at 2, ¶ 7.)  Riggins testified that his company's services enable individuals to access their e-mail on their smart phones by serving as the connection between the cellular data carrier and the e-mail service provider.  (Doc. 105 at 124–25.)  In other words, Seven Networks receives user data that is entered into a cellular data carrier's e-mail application (i.e., the actual application on an end user's smart phone) and then passes it along to the appropriate e-mail service provider such as Gmail or Yahoo.  (*Id.* at 125–27.)  The e-mail service provider then sends the data back through Seven Networks to the cellular data carrier.  (*Id.*)  Riggins's testimony was clearly derived from his own personal knowledge of his company's processes and was admissible under Fed. R. Evid. 601 and 602.

In the course of his testimony, Riggins also properly authenticated the electronic evidence under Fed. R. Evid. 901 and provided a business records foundation for admission of the evidence under Fed. R. Evid. 803(6).  Riggins testified as a fact witness concerning the proffered evidence, explaining that Seven Networks electronically stored

records of the data sent through its networks. (*Id.* at 128.) Most significantly, Riggins testified that Seven Networks' business records revealed that a person using Weisinger's Samsung smart phone received an e-mail on October 3, 2011, opened an attachment to that e-mail, and then deleted the e-mail. (*Id.* at 134.)

Accordingly, Riggins's testimony was limited to matters he knew from his own personal knowledge, as well as authentication of the electronic evidence, and the business records exception to the hearsay rule. Contrary to Weisinger's claim, Riggins did not testify as an expert witness. Weisinger's ineffective assistance claim regarding Riggins is thus without merit.

### E.    Withholding Evidence at Trial

In his fourth argument, Weisinger claims that Attorney McColgin failed to present "discovery/evidence" through cross-examination which would have exonerated Weisinger. (Doc. 117 at 8.) Specifically, Weisinger claims that McColgin failed to impeach the testimony of the minor victim's mother by showing that she knew "how to use webcam on [a] laptop." (*Id.*) Although not specified, Weisinger presumably refers to the laptop used by the minor victim to create the sexually explicit video. Weisinger also apparently contends that the minor victim should have been confronted with evidence that she had created "other videos that . . . were time[]stamped." (*Id.*) At the trial, the government presented evidence of other videos made by the minor victim which bore timestamps showing that they had been created several months before the sexually explicit video.

Finally, in an unclear argument, Weisinger adds: "Incest story downloaded while I was at work, other stories that were clicked on[]to imbed titles into hard drive."[5]  (*Id.*)

In his Affidavit, McColgin states that he is unaware of the specific evidence that Weisinger now claims should have been used to impeach the victim's mother's testimony on the issue of her ability to use the relevant computer's internal camera.  (Doc. 127 at 2, ¶ 8.)  At the outset, it bears noting that in advancing this claim, Weisinger is in fact mounting an attack on the credibility of the witness (and thus the sufficiency of the evidence) under the guise of an ineffective assistance of counsel claim.  In the absence of a showing of both good cause and actual prejudice, his sufficiency of the evidence claim, which was not raised in the direct appeal, is waived.

With regard to the creation of other unrelated videos by the minor victim, McColgin states that "it is not clear what [these other videos are] or how [they] would have affected [the minor victim's] credibility."  (*Id.*)  Finally, regarding what Weisinger refers to as the "[i]ncest story," McColgin again notes that Weisinger's employment records did not show that he was at work when the story was accessed.  (*Id.* at 2–3, ¶ 8.)  Therefore, even if these employment records had been introduced at trial, it still reasonably could be inferred that Weisinger himself had accessed the story.

As with Attorney McColgin's other tactical decisions, the attorney decisions of which Weisinger now complains were reasonable tactical decisions, and the court should

---

[5]  At trial, the court permitted the government to elicit evidence to show that adult pornography websites, including a website that contained a story about incest, had been accessed on the relevant computer.  After hearing argument from counsel, the court was persuaded that the evidence was relevant to establish that Weisinger had access to the computer.  (Doc. 105 at 5–14.)

not second-guess them. "Decisions whether to engage in cross-examination, and if so to what extent and in what manner, are similarly strategic in nature." *United States v. Nersesian*, 824 F.2d 1294, 1321 (2d Cir. 1987). A review of the trial transcript reveals that McColgin engaged in a professional and zealous cross-examination of both the minor victim and her mother. (Doc. 105 at 186–220; Doc. 106 at 132–68.) Moreover, as explained by McColgin, the alleged exculpatory evidence would not have exonerated Weisinger. McColgin's decision not to present this evidence simply cannot be viewed as an error so serious that he was not functioning as counsel under prevailing professional norms. *See Strickland*, 466 U.S. at 687, 689.

Weisinger also fails to satisfy *Strickland's* prejudice prong regarding this evidence. As noted earlier, a petitioner establishes prejudice when he "show[s] that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Gueits v. Kirkpatrick*, 612 F.3d 118, 122 (2d Cir. 2010) (quoting *Strickland*, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. There is not a reasonable probability that the evidence, if offered, would have changed the result of the trial. Whether the victim's mother knew how to use the subject webcam is of minimal relevance, given that the evidence presented at trial established that the victim (not her mother) recorded herself engaging in sexually explicit conduct at the direction of Weisinger. (Doc. 105 at 141: 21; *id.* at 145: 3.) Regarding any other videos created by the minor victim, it appears that Weisinger is contending their timestamps would show that he was not with the victim when the videos were made. But when those other videos were

19

created are of minimal relevance.  Lastly, admission of Weisinger's work timesheets into evidence in order to compare them to the timestamps on the downloaded incest story would not have altered the outcome of the proceeding.

### F.    Weisinger's Decision Not to Testify

In his final claim, Weisinger argues that Attorney McColgin failed to prepare him to testify in his own defense, leading him to decide not to testify even though McColgin knew Weisinger "was very adamant about taking the stand."  (Doc. 117 at 10.)  Of course, criminal defendants have the right to testify in their own defense.  *Brown v. Artuz*, 124 F.3d 73, 76–78 (2d Cir. 1997) (citing *Rock v. Arkansas*, 483 U.S. 44, 49 (1987)).  And while defense attorneys control many of the strategic choices made during trial, "[t]he ultimate decision to testify remains at all times with the defendant."  *United States v. Siddiqui*, 699 F.3d 690, 705 (2d Cir. 2012) (citing *Brown*, 124 F.3d at 77–78)).  During the trial of this matter, after the government rested its case, the court advised Weisinger that he had a right to testify in his own defense, and that the decision was not that of his attorney, but his alone.  (Doc. 106 at 207.)  The court further advised that Weisinger was to make his decision whether to testify "in consultation with [his] attorneys."  (*Id.*)  Weisinger testified that he understood these concepts.  (*Id.*)  During trial, later that same day, Weisinger was afforded a short recess to discuss with his attorneys whether or not he wished to testify.  (*Id.* at 268.)  After the recess, McColgin stated that Weisinger had "elected not to testify."  (*Id.* at 269.)

In his Affidavit, McColgin directly disputes Weisinger's assertion that McColgin did not prepare Weisinger to testify.  McColgin states that his cocounsel, Attorney

Barclay T. Johnson, conducted "preparatory cross-examination of Mr. Weisinger" to assist Weisinger in making the decision whether he wanted to testify in his own defense. (Doc. 127 at 3, ¶ 9.) According to McColgin, following that preparation, Weisinger agreed with his attorneys that "it would only hurt his case for him to testify because of the likely areas of damaging cross-examination he would face." (*Id.*) Thus, McColgin asserts that Weisinger himself "chose not to testify." (*Id.*)

When confronted with conflicting factual assertions from a defendant and his allegedly ineffective counsel, it is within a court's discretion whose version of events to credit. *See Puglisi v. United States*, 586 F.3d 209, 214 (2d Cir. 2009). Moreover, it is Weisinger who bears the burden of proof. Here, I find that Attorney McColgin's version of the events is credible and Weisinger has failed to satisfy the burden of proof required to establish his claim.

There is also no need to hold an evidentiary hearing in this matter. The filing of a Section 2255 petition does not, by itself, obligate the district court to conduct an evidentiary proceeding. *Newfield v. United States*, 565 F.2d 203, 207 (2d Cir. 1977) (filing of motion "does not entitle petitioner automatically to a hearing"). Where the existing record "conclusively show[s] that the petitioner is entitled to no relief," summary dismissal may be appropriate. *Id*.; see also 28 U.S.C. § 2255; *United States v. Stantini*, 85 F.3d 9, 17 (2d Cir. 1996). The trial record and the affidavit of counsel are sufficient to show that Weisinger is not entitled to the relief he seeks.

**Conclusion**

Based on the foregoing, I recommend that Weisinger's § 2255 Motion to Vacate, Set Aside, or Correct Sentence (Doc. 117) be DENIED.  In a proceeding under § 2255, a certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  Under this standard, a certificate of appealability will not issue unless reasonable jurists could debate whether the petition should have been resolved in a different manner, or the issues are "adequate to deserve encouragement to proceed further."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citation omitted).  Weisinger does not satisfy this standard.  Accordingly, I further recommend that a certificate of appealability be DENIED.

Dated at Burlington, in the District of Vermont, this 7th day of December, 2016.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge

Any party may object to this Report and Recommendation within 14 days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections which shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b)(2); L.R. 72(c).  Failure to timely file such objections "operates as a waiver of any further judicial review of the magistrate's decision."  *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).